IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| GWENDOLYN SMALLS, )<br>as Administratrix of the Estate of Linwood )<br>Raymond Lambert, Jr., deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHIEF OF POLICE JAMES W. BINNER, )<br>DEPUTY CHIEF OF POLICE BRIAN K. )<br>LOVELACE, TOWN OF SOUTH )<br>BOSTON, CORPORAL TIFFANY )<br>BRATTON, OFFICER CLIFTON MANN, )<br>and OFFICER TRAVIS CLAY, )<br>)<br>Defendants. ) | Case No. 4:15-cv-00017<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Jackson L. Kiser<br>    Senior United States District Judge |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint in Part.[1] The parties have fully briefed the Motion, and I have reviewed the relevant filings and counsel's arguments. For the reasons stated herein, I will grant the Motion without leave to amend.

### I.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[2]

Around 11:00 p.m. on May 3, 2013, Linwood Raymond Lambert, Jr., ("Decedent") checked into the Super 8 Motel in South Boston. (Second Am. Compl. ¶ 53, Nov. 18, 2015 [ECF No. 103].) Before 1:30 a.m. the next day, a 9-1-1 dispatcher phoned the motel's desk clerk and

---

[1] While this Motion was pending, Plaintiff filed a Second Amended Complaint, changing the word "murder" to "death" in ¶¶ 98, 112, and 185, in compliance with Magistrate Judge Robert S. Ballou's Order. (See Order, Nov. 13, 2015 [ECF No. 101]. Compare Second Am. Compl., Nov. 18, 2015 [ECF No. 103], with Am. Compl., Aug. 10, 2015 [ECF No. 46].) Those changes are immaterial to this Motion, and my ruling will apply to the Second Amended Complaint.

[2] At this stage, the facts are recited in the light most favorable to Plaintiff, and reasonable inferences are drawn in her favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

asked whether a guest was staying in Room 223. (Id. ¶ 54.) The desk clerk answered in the affirmative (id. ¶ 55), and three South Boston Police Department officers—Corporal Tiffany Bratton, Officer Clifton Mann, and Officer Travis Clay—arrived to check the room (id. ¶ 56). The guests informed the officers that they had not phoned 9-1-1 (id. ¶ 57), so the officers left (id. ¶ 58). A 9-1-1 dispatcher called again, sometime after 1:30 a.m., to ask whether a guest was in Room 123. (Id. ¶ 59.) The desk clerk affirmed. (Id. ¶ 60.) The same officers returned but left upon learning that those guests had not called. (Id. ¶¶ 61–63.)

Following the officers' second departure, the desk clerk heard "the sound of metal banging on metal . . . near Room 109" (id. ¶ 64), Decedent's room (id. ¶ 66). She knocked on the door and asked the guest to "keep the noise down." (Id. ¶ 65.) At about 4:30 a.m., the desk clerk phoned the South Boston Police Department. (Id. ¶ 67.) The same three officers returned and went to Decedent's room. (See id. ¶ 68.) Decedent opened the door and told the officers "that he was nervous about a blue truck . . . in the parking lot." (Id. ¶¶ 69–70.) At their request, Decedent voluntarily left the motel with the officers around 5:00 a.m. (Id. ¶¶ 71–73.)[3]

The officers took Decedent "to Halifax Regional Hospital for medical attention to . . . an apparent medical/psychological condition." (Id. ¶ 74.) Decedent was handcuffed when they arrived, and Corporal Bratton, along with Officer Mann or Officer Clay, tased Decedent "in front of the emergency room doors." (Id. ¶¶ 75, 86.)[4] They tased him multiple times. (Id. ¶¶ 4, 91–92.)

---

[3] Decedent "was unarmed and non-threatening" when the officers first encountered him. (Second Am. Compl. ¶ 93.) None of the officers observed Decedent "to have committed any crime," to have "engaged in any criminal conduct" (id. ¶ 94), to have possessed a weapon, or to have "ma[de] a threatening move against any police officer on the scene" (id. ¶ 95). Decedent was not "fleeing from the commission of [a] crime or attempting to evade a lawful arrest." (Id. ¶ 96.)

[4] According to Plaintiff, these officers "had a history of excessive and gratuitous use of their TASER weapons" (Second Am. Compl. ¶ 106), and Chief of Police James W. Binner, Deputy Chief of Police Brian K. Lovelace, the Town of South Boston, and the South Boston Police Department knew or should have known of this history and of these officers' inadequate training (id. ¶¶ 104, 107). Plaintiff alleges

The officers then dragged Decedent "across the hospital parking lot and threw him in[to] a police cruiser." (Id. ¶ 77.) Decedent remained in the police cruiser for about fifteen minutes before the officers took him to jail without obtaining the needed medical attention. (Id. ¶¶ 78–79, 82–83.) There, Decedent "went into cardiac arrest." (Id. ¶ 87.) While being returned to Halifax Regional Hospital, he "became unresponsive." (Id. ¶ 89.) "'[I]n full cardiac and respiratory arrest,'" Decedent was intubated and connected to an auto-pulse machine. (Id. ¶ 85.) CPR began at 5:28 a.m. (Id.) Decedent, still unresponsive, arrived at the hospital at 6:06 a.m. and "was pronounced dead minutes later." (Id. ¶¶ 80–81, 84.)

According to the Second Amended Complaint, shortly after Decedent's death, the Town of South Boston, the South Boston Police Department, Chief of Police James W. Binner, and Deputy Chief of Police Brian K. Lovelace "deliberately sought to cover-up the facts and circumstances surrounding" Decedent's death by releasing information to the press so as to suggest that Corporal Bratton, Officer Mann, and Officer Clay "were acting properly." (Id. ¶¶ 98, 103.) Chief Binner's and Deputy Chief Lovelace's representations were knowingly false, misleading, or both. (Id.) In a press conference, Deputy Chief Lovelace omitted mention of any tasing or medical emergency but "commented . . . 'that [Decedent] died after being taken into police custody for being disorderly and causing property damage at the Super 8 Motel . . . .'" (Id. ¶ 101; see also id. ¶¶ 100, 102.) Before filing the present action, Decedent's sister and the administratrix of his estate, Gwendolyn Smalls ("Plaintiff") (id. ¶¶ 30, 32), "sent multiple written requests to the South Boston Police Department seeking the release of the police report and other investigative materials . . . exclusively in the possession of the South Boston Police Department

---

that they took no steps to have their officers "appropriately trained and supervised" (id. ¶¶ 105, 110) but "routinely allow[ed]" the officers to use tasers (id. ¶ 109). After Decedent's death, the Town of South Boston, the South Boston Police Department, Chief Binner, and Deputy Chief Lovelace "acknowledged that the[ir] policies, procedures, and practices related to the use and training of TASER weapons were insufficient" and "amended, changed, altered, and/or modified" them. (Id. ¶ 108.)

3

Case 4:15-cv-00017-JLK-RSB   Document 119   Filed 12/08/15   Page 3 of 10   Pageid#: 917

and/or the Town of South Boston" (id. ¶ 15). They withheld these materials "under the guise 'of an ongoing investigation.'" (See id. ¶ 16.)

At all relevant times, Chief Binner, Deputy Chief Lovelace, Corporal Bratton, Officer Mann, and Officer Clay "act[ed] within the course and scope of their employment with the South Boston Police Department" (id. ¶¶ 36, 111), a department of the Town of South Boston (see id. ¶¶ 40–41). Chief Binner and Deputy Chief Lovelace were responsible for the police department's daily operation and for its policies. (Id. ¶¶ 37–38.) The Town of South Boston, the South Boston Police Department, Chief Binner, and Deputy Chief Lovelace were responsible for the conduct of Corporal Bratton, Officer Mann, and Officer Clay. (Id. ¶ 112; see id. ¶¶ 37–38.)

Plaintiff has filed the present action against Chief Binner, Deputy Chief Lovelace, the Town of South Boston, Corporal Bratton, Officer Mann, and Officer Clay ("Defendants") for various constitutional and state-law torts. She has filed against the nonentity Defendants "in their individual and official capacities" (id. ¶ 35) and against the Town of South Boston for its own acts, omissions, or both "and under the theory of respondeat superior" (id. ¶ 43).

Plaintiff's initial Complaint alleged, as Count IX, Defendants' conspiracy to violate civil rights. (Compl. ¶¶ 159–68, Apr. 29, 2015 [ECF No. 1].) On Defendants' motion, I dismissed that count but granted Plaintiff leave to amend. (Order, Aug. 10, 2015 [ECF No. 45].) Plaintiff's Second Amended Complaint seeks to state this claim under 42 U.S.C. §§ 1983 and 1985. (Second Am. Compl. pg. 28.) Contending that it fails to do so, Defendants move for dismissal without leave to amend.

According to the Second Amended Complaint, the nonentity Defendants "acted jointly and in concert to deprive" Decedent "of his civil rights." (Second Am. Compl. ¶¶ 169, 179.) The excessive force, deprivation of medical care, and cover up "were carried out in furtherance of the

conspiracy." (Id. ¶¶ 170–71; see id. ¶¶ 173, 176; see also id. ¶ 22). These acts resulted from "an actual and/or tacit plan formulated by a mutual understanding to try and accomplish a common and unlawful plan." (Id. ¶ 176.) These acts were "motivated by class based animus arising from the fact that [Decedent] was African American" (id. ¶ 173), and this animus was consistent with the South Boston Police Department's policies and customs (id. ¶ 174). The Town of South Boston and the South Boston Police Department have failed to release "the police report and other investigative materials" to Plaintiff (id. ¶ 181), who has made "multiple written requests" (id. ¶ 178). This refusal has resulted from their policies and customs and is a "conspiracy to cover up the violations of [Decedent's] Fourth and Fourteenth Amendment Civil Rights." (Id. ¶ 181; see also id. ¶¶ 16, 18.) Defendants "knew or should have known the conspiracy's purpose and each . . . participated in the conspiracy in some fashion." (Id. ¶ 177.)

## II.    STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted). The Federal Rules have made "'a notable and generous departure from the hyper-technical, codepleading regime of a prior era,'" but they "'do[] not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678–79).

### III. DISCUSSION

A. The intracorporate-conspiracy doctrine defeats Count IX.

"While the intracorporate conspiracy doctrine arose in antitrust actions, the Fourth Circuit has consistently applied it in other contexts, including actions brought under §§ 1983 and 1985." Veney v. Ojeda, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004). Under the doctrine,

> acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

Balt.-Wash. Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 744 (D. Md. 2008); see also Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985). The doctrine applies to a Virginia municipality and its agents. See Fox v. Deese, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987).[5]

Of course, if a corporation has not authorized its agents' acts, then theirs are not corporate acts. See id.; see also Buschi, 775 F.2d at 1252–53. On Rule 12(b)(6) review, the intracorporate-conspiracy doctrine will not apply if a plaintiff has "allege[d] that [the agents]

---

[5] Fellow district courts within the Fourth Circuit have considered the doctrine to apply to municipalities and their agents. E.g., Williams v. Mayor of Baltimore, No. WMN-14-1125, 2014 WL 5707563, at *6 (D. Md. Nov. 4, 2014); Price v. Town of Atl. Beach, No. 4:12-CV-02329-MGL, 2013 WL 5945724, at *10 n.6 (D.S.C. Nov. 6, 2013); Alexander v. City of Greensboro, 762 F. Supp. 2d 764, *passim* (M.D.N.C. 2011); Burnley v. Norwood, No. 3:10CV264-HEH, 2010 WL 3063779, at *8 (E.D. Va. Aug. 4, 2010); Franklin v. Yancey Cnty., No. 1:09CV199, 2010 WL 317804, at *5 (W.D.N.C. Jan. 19, 2010); Karagiannopoulos v. City of Lowell, No. 3:05-CV-00401-FDW, 2008 WL 2447362, at *6 & n.8 (W.D.N.C. June 13, 2008), aff'd, 305 F. App'x 64 (4th Cir. 2008) (per curiam); Iglesias v. Wolford, 539 F. Supp. 2d 831, 836 (E.D.N.C. 2008); High Peak P'ners, LLC v. Bd. of Supervisors of Prince George Cnty., No. 3:07CV757-HEH, 2008 WL 1733605, at *4 (E.D. Va. Apr. 14, 2008). Other federal courts have come to the same conclusion. E.g., L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, 673 F.3d 799, 812 (8th Cir. 2012); Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010); Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008).

acted other than in the normal course of their corporate duties." Cole v. Univ. of Hartford, 391 F. Supp. 888, 893 (D.Conn.1975), cited with approval in Buschi, 775 F.2d at 1252.[6]

Plaintiff has alleged that, at all relevant times, Corporal Bratton, Officer Mann, and Officer Clay "were acting within the course and scope of their employment with the South Boston Police Department" (Second Am. Compl. ¶¶ 36, 111) and that their unconstitutional acts resulted from "the policies, practices, customs, and/or procedures of the South Boston Police Department and/or the Town of South Boston which were implemented, overseen, approved, ratified, and/or controlled by Chief of Police, James W. Binner and/or Deputy Chief of Police, Brian K. Lovelace" (id. ¶ 39; see also id. ¶ 23).[7] Plaintiff attributes the alleged refusal to supply information to "the policies and customs of the Town of South Boston and the South Boston Police Department." (Id. ¶ 181.) The only reasonable conclusion to be drawn from these allegations is that the Town of South Boston authorized the complained-of conduct. Under the intracorporate-conspiracy doctrine, the nonentity Defendants could not have conspired with each other, or with the municipality, to engage in the conduct.[8] Plaintiff fails to state a claim for conspiracy.

---

[6] Although no Virginia court seems to have done so, Vollette v. Watson, 937 F. Supp. 2d 706, 727 n.19 (E.D. Va. 2013), the Fourth Circuit has recognized another circumstance where the intracorporate-conspiracy doctrine does not apply—where an agent has an "'independent personal stake in achieving the corporation's illegal objective,'" see Buschi, 775 F.2d at 1252–53 (quoting Greenville Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974)). Regardless of its availability in the abstract, Plaintiff does not raise it, and it clearly would not apply here.

[7] For that matter, Plaintiff has also alleged that Chief Binner and Deputy Chief Lovelace were acting within the scope of their authority. (Second Am. Compl. ¶ 36.)

[8] The gist of Plaintiff's argument seems to be that Defendants' alleged conduct was unauthorized insofar as it was unconstitutional; however, the focus, here, is on *corporate* authorization. Citing several decisions, Plaintiff also contends that courts confronting factually-analogous scenarios have held that the intracorporate-conspiracy doctrine did not apply. Those decisions are unavailing. In Collins v. Bauer, the plaintiff alleged conspiratorial excessive force to have "occurred despite a direct order by a sergeant not to chase [the plaintiff] and despite the City's no-chase policy." No. 3:11-CV-00887-N, 2012 WL 443010, at *8 (N.D. Tex. Jan. 23, 2012). In Walters v. County of Charleston, the court considered officers'

7
Case 4:15-cv-00017-JLK-RSB   Document 119   Filed 12/08/15   Page 7 of 10   Pageid#: 921

B. Alternatively, Plaintiff's allegations do not suffice to state all elements of a §§ 1983 or 1985 conspiracy.

Even if the intracorporate-conspiracy doctrine were inapplicable, Plaintiff fails to sufficiently allege a §§ 1983 or 1983 conspiracy.

1. For § 1983 conspiracy, Plaintiff fails to sufficiently allege agreement.

"[M]eeting of the minds" is "a necessary element of a conspiracy." Smith v. McCarthy, 349 F. App'x 851, 858 (4th Cir. 2009) (per curiam); Hafner v. Brown, 983 F.2d 570, 576 n.6 (4th Cir. 1992). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). "'Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice . . . . The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.'" Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 559 (M.D. Pa. 2012) (quoting Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992)); cf. Waller v. Butkovich, 584 F. Supp. 909, 931 (M.D.N.C. 1984).

Plaintiff's allegations fall short. The Second Amended Complaint asserts unlawful actions taken "jointly and in concert" (Second Am. Compl. ¶¶ 169, 179), "conspir[acy] to cover up the violations of . . . Fourth and Fourteenth Amendment civil rights" (id. ¶ 22), "conspir[acy] to deny [Decedent] timely medical attention" (id.), "actions . . . carried out in furtherance of the conspiracy" (id. ¶ 171), "unlawful actions . . . result[ing from] an actual and/or tacit plan formulated by a mutual understanding to try and accomplish a common and unlawful plan" (id.

---

"'malicious[] and sadistic[]'" conduct to be outside of the scope of authority but elaborated no further on their scope of authority. No. 2:01-0059-18, 2002 WL 34703346, at *8 (D.S.C. Feb. 7, 2002). Neither decision supports a proposition that pleading authorization suffices to plead unauthorization. Finally, in Blakeney v. O'Donnell, the court applied a criminal-acts exception, No. 1:14-CV-01139 (APM), 2015 WL 4624163, at *7–8 (D.D.C. Aug. 3, 2015), which does not seem to have been adopted in Virginia or in the Fourth Circuit, see Vollette, 937 F. Supp. 2d at 728–29, and which Plaintiff does not argue.

¶ 176), knowledge "of the conspiracy's purpose and . . . participat[ion] in the conspiracy in some fashion" (id. ¶ 177), and "conspiracy to cover up" by refusing to supply requested information (id. ¶ 181). The facts stated and reasonably inferred establish only conduct in common. Nothing other than bare conclusion establishes conspiratorial agreement.

> 2. For § 1985 conspiracy, Plaintiff fails to sufficiently allege motivation by racial or class-based animus.

Among the elements of a § 1985(3) conspiracy is "that the conspiracy must be motivated by 'some racial, or perhaps otherwise class-based invidiously discriminatory animus.'" Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985) (quoting Griffen v. Breckenridge, 403 U.S. 88, 102 (1971)). A plaintiff must plead this element with "specific facts." Francis v. Giacomelli, 588 F.3d 186, 196–97 (4th Cir. 2009).

Plaintiff's allegations do not suffice. The Second Amended Complaint propounds beliefs and averments that the excessive force, deprivation of medical care, and cover up were "motivated by class based animus arising from the fact that [Decedent] was African American" (Second Am. Compl. ¶ 173), and that the South Boston Police Department condoned, accepted, or promoted these civil-rights violations "based upon race based animus, especially toward African American citizens" (id. ¶ 174). Shorn of bare conclusion, the Second Amended Complaint identifies Decedent's race and Defendants' alleged torts but does not link them by the required motivation.

C. The Court will deny leave to amend.

Although a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it may deny leave "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile," Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 769 (4th Cir. 2011).

Here, leave to amend would be futile, and it would unduly burden Defendants. The intracorporate-conspiracy doctrine leaves Count IX unsalvageable, and the factual allegations are lacking in the same manner in which the initial Complaint's were. Even if Plaintiff could salvage Count IX, the unlikelihood of her doing so does not justify the accompanying delay and distraction. Defendants should not have to focus additional time and energy on Plaintiff's repleading of Count IX, while they must tend to the myriad other aspects of the litigation. The circumstances do not justify a third bite at the apple.

## IV. CONCLUSION

I will dismiss Count IX without leave to amend. The intracorporate-conspiracy doctrine bars it; moreover, Plaintiff insufficiently alleges an agreement for § 1983 conspiracy and motivation by racial or class-based animus for § 1985 conspiracy. I will deny leave to amend, given the unlikelihood of cure and the likelihood of undue delay and distraction.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 8th day of December, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE